IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) Case No. 1:22-cv-2070 |
| v. | ) ) |
| BEHROUZ NADJI, | ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

Plaintiff United States of America alleges as follows:

1. The United States brings this action to reduce to judgment civil penalty assessments against Behrouz Nadji, pursuant to 31 U.S.C. § 5321(a)(5). These penalties, commonly known as "FBAR penalties," arise from Mr. Nadji's failure to timely report his financial interest in, or signatory authority or other authority over, foreign bank accounts for the 2008, 2009, 2010, 2011, and 2012 calendar years, as required under 31 U.S.C. § 5314 and related regulations.

2. The IRS Chief Counsel, a delegate of the Secretary of the Treasury, has authorized this action, which the United States brings at the direction of the Attorney General's delegate, pursuant to 31 U.S.C. § 3711(g)(4)(C).

### Jurisdiction and Venue

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355.

1

4. Venue properly lies in the District of Colorado under 28 U.S.C. §§ 1391(b)(1) and 1395(a).

**The Defendant**

5. Mr. Nadji resides in Englewood, Colorado. During the years at issue, Mr. Nadji was a naturalized citizen of the United States.

6. Mr. Nadji was born in Iran in 1944.

7. In the 1960s, Mr. Nadji received an education in Europe before moving to the United States to study engineering, eventually obtaining his Master of Science degrees in engineering and computer science and Ph.D. in engineering.

8. In the 1970s, Mr. Nadji returned to Iran to work for The National Gas Company in Tehran.

9. Mr. Nadji and his family moved back to the United States and he became a naturalized U.S. citizen in 1992.

**Foreign Bank or Financial Account Reporting Requirements**

10. Federal law requires every resident or citizen of the United States who has a financial interest in, or signatory or other authority over, a bank, securities, or other financial account in a foreign country to report that relationship to the Department of Treasury for each year in which the relationship exists. *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

11. To fulfill this requirement, a U.S. resident or citizen must file with the IRS a "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." To report information for all years through 2012, the proper FBAR form was Form YD F 90-22.1.

12. For each of the calendar years at issue in this action, an FBAR was due no later

than June 30 of the subsequent calendar year for any year in which the aggregate balance of the foreign financial accounts exceeded $10,000. *See* 31 C.F.R. § 1010.306(c).

13. Any U.S. resident or citizen who is required to comply with the FBAR reporting requirements, but fails to do so, may be subject to a civil penalty. For violations involving the willful failure to report an interest in a foreign account, the maximum civil penalty for each violation is the greater of $100,000 or 50% of the balance in the account at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C).

14. This FBAR penalty is subject to interest and additional penalties or other additions under 31 U.S.C. § 3717.

## Mr. Nadji's Foreign Accounts

15. In 1986, Mr. Nadji started Comar Engineering Company, Ltd., an Iranian corporation that specialized in desalinating water and other water treatment services. Mr. Nadji continued to operate Comar from the United States after becoming a U.S. citizen.

16. At formation, Mr. Nadji owned 100% of the Comar shares and served as the company's chairman.

17. Comar operated exclusively in Iran and was very successful; it filed no United States tax returns.

18. Though Mr. Nadji grew wealthy from Comar's success, he did not report on U.S. tax returns, or pay tax on, income from Comar. He did not do so in Iran either.

19. During 2008 Mr. Nadji had interest in and control over four foreign bank accounts; from 2009 through 2012, Mr. Nadji had interest in and control over three foreign bank accounts.

3

20. In 2008, Mr. Nadji held two accounts at St. Galler Kantonalbank in Switzerland ("Kantonalbank"): one as a personal account and the other on behalf of Comar. Mr. Nadji was the sole signer on both Kantonalbank accounts.

21. Mr. Nadji kept most of his money – including income from Comar – in these Swiss accounts.

22. In 2009, Mr. Nadji transferred between $28 million and $43 million from his personal account to the Comar account. He then closed his personal account.

23. Mr. Nadji also had interest in and control over one personal account at Banca Passadore in Italy.

24. The fourth foreign account was a family bank account at Bank Tejarat in Iran.

25. Mr. Nadji was actively involved with these foreign accounts, making over $1.5 million in withdrawals from 2009 through 2012 and initiating wire transfers.

26. These four accounts are more particularly identified as follows:

| Foreign Bank | Account No. Last 4 Digits | Description |
|---|---|---|
| St. Galler Kantonalbank (SGK) | 1961 | Comar Business Account |
| St. Galler Kantonalbank (SGK) | 7702 | Nadji Personal Account |
| Banca Passadore | 4000 | Nadji Personal Account |
| Bank Tejarat | Unknown | Family Account |

**Mr. Nadji's Willful Failure to File FBARs**

27. Mr. Nadji set up the Kantonalbank accounts to deposit money from Comar. Even after Mr. Nadji and his family moved to the United States, Mr. Nadji continued to use these Swiss accounts to conduct his business in Iran from the United States.

4

28. He was actively involved in the management of the foreign accounts and authorized several substantial payments and transfers from the accounts.

29. Mr. Nadji had tax withheld from the Kantonalbank accounts but did not file returns or requests refunds for the amounts withheld.

30. He also paid a fee to Kantonalbank to have it retain all correspondence to Mr. Nadji at the bank.

31. Mr. Nadji hired a tax preparer in Colorado to prepare and file his 2006-2012 federal income tax returns.

32. Mr. Nadji did not disclose his foreign bank accounts or foreign income to the return preparer.

33. Mr. Nadji's federal income tax returns did not disclose the foreign accounts or income.

34. Neither the tax return preparer nor Mr. Nadji filed timely FBARs for 2008, 2009, 2010, 2011, or 2012.

## Participation in OVDI

35. In 2014, Mr. Nadji entered into the 2014 Offshore Voluntary Disclosure Initiative ("OVDI").  The OVDI program offered taxpayers with unreported foreign interests and/or income an opportunity to avoid criminal prosecution and settle civil and criminal penalties.

36. As part of the OVDI process, Mr. Nadji disclosed his ownership or control over the four accounts discussed above.

37. Mr. Nadji also filed delinquent FBARs for the 2008, 2009, 2010, 2011, and 2012 calendar years on May 5, 2015, as part of OVDI.

38. On these delinquent FBARs, Mr. Nadji reported the following highest balances for his four foreign accounts:

| Account | 2008 High Balance | 2009 High Balance | 2010 High Balance | 2011 High Balance | 2012 High Balance |
|---|---|---|---|---|---|
| SGK 7702 | $44,006,153 | Closed | Closed | Closed | Closed |
| SGK 1961 | $253,078 | $45,657,010 | $45,657,010 | $32,955,431 | $32,736,086 |
| Banca Passadore | $38,076 | $542,751 | $125,470 | $45,112 | $26,874 |
| Bank Tejarat | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Total | $44,302,307 | $46,204,761 | $45,597,480 | $33,005,543 | $32,777,880 |

39. The IRS eventually removed Mr. Nadji from the OVDI program because Mr. Nadji disagreed with the final closing package.

### **CLAIM FOR RELIEF: Reduce Willful FBAR Penalties to Judgment**

40. The United States incorporates by reference the allegations in Paragraphs 1 through 39.

41. During the 2008 through 2012 calendar years, Mr. Nadji was a United States person within the meaning of 31 C.F.R. § 1010.350(b).

42. Mr. Nadji had a financial interest in, or signature or other authority over, two accounts at Kantonalbank in Switzerland, one account at Banca Passadore in Italy, and one account at Bank Tejarat in Iran.

43. During the 2008, 2009, 2010, 2011, and 2012 calendar years, the aggregate balance in the accounts exceeded $10,000.

44. By June 30, 2009, Mr. Nadji was required to file FBARs reporting his interest in all four accounts for 2008. By June 30, 2010, Mr. Nadji was required to file FBARs reporting his interest in his personal Kantonalbank account, his Banca Passadore account, and Bank Terejat

6

account for 2009. By June 30, 2011, Mr. Nadji was required to file FBARs reporting his interest in the previous three accounts for 2010. By June 30, 2012, Mr. Nadji was required to file FBARs reporting his interest in the three accounts for 2011. By June 30, 2013, Mr. Nadji was required to file FBARs reporting his interest in the three accounts for 2012.

45. Mr. Nadji filed delinquent FBARs on May 5, 2012, while participating in the OVDI. He thus did not file FBARs by the statutory deadlines.

46. Under 31 U.S.C. § 5321(b), the time for the IRS to assess FBAR penalties for these years expired on June 30, 2014, June 30, 2015, June 30, 2016, June 30, 2017, and June 30, 2018, respectively.

47. Mr. Nadji executed several consents to extend the statute of limitations for assessment of these FBAR penalties, ultimately extending the limitations period until December 31, 2020.

48. On August 27, 2020, the IRS assessed willful FBAR penalties against Mr. Nadji as follows:

| Account | 2008 | 2009 | 2010 | 2011 | 2012 | Total |
| --- | --- | --- | --- | --- | --- | --- |
| SGK 7702 | $5,035,697 | N/A | N/A | N/A | N/A | $5,035,697 |
| SGK 1961 | $28,960 | $5,224,607 | $5,202,864 | $3,771,144 | $3,746,044 | $17,973,619 |
| Banca Passadore | $4,357 | $62,108 | $14,358 | $5,162 | $4,220 | $90,205 |
| Bank Tejarat | $572 | $572 | $572 | $572 | $572 | $2,860 |
| Total | $5,069,586 | $5,287,287 | $5,217,794 | $3,776,878 | $3,750,836 | $23,102,381 |

49. The IRS made the assessments stated in Paragraph 48 pursuant to 31 U.S.C. § 5321(a)(5)(C), which imposes a penalty not to exceed the greater of $100,000 or 50% of the balance in the account at the time of the violation for each willful violation of the FBAR filing

requirements in 31 U.S.C. § 5314.

50. On August 27, 2020, the IRS provided Mr. Nadji notice of, and demanded payment for, the FBAR penalties for 2008, 2009, 2010, 2011, and 2012.

51. Despite receiving notice and demand for payment, Mr. Nadji has not paid the outstanding FBAR penalties described in Paragraph xx.

52. Pursuant to 31 U.S.C. § 3717(a)(1), the United States is entitled to recover prejudgment interest that has accrued on Mr. Nadji's unpaid FBAR penalties.

53. Pursuant to 31 U.S.C. § 3717(e)(2), the United States is entitled to recover a penalty for Mr. Nadji's failure to pay a lawful debt owed the United States.

54. Pursuant to 31 U.S.C. § 3717(e)(1), the United States is entitled to recover the cost of processing and handling Mr. Nadji's unpaid FBAR penalties.

55. Mr. Nadji thus is liable to the United States for $23,102,381 in willful FBAR penalties, $2,631,772.60 in accrued and assessed late payment penalties, and $877,257.53 of interest, plus costs of collection, pursuant to 31 U.S.C. § 3717, as of August 11, 2022. The United States is entitled to recover $26,611,411.13, plus interest, penalties, and costs accruing from August 11, 2022.

WHEREFORE, the United States respectfully requests that the Court:

A. Enter judgment in favor of the United States and against Defendant Behrouz Nadji in the amount of $26,611,411.13, as of August 11, 2022, plus interest, penalties, and costs accruing from that date; and

B. Award the United States its costs in the action and any other relief the Court finds appropriate.

Respectfully submitted August 15, 2022.

DAVID A. HUBBERT
Deputy Assistant Attorney General

*s/Chelsea Bissell*
CHELSEA BISSELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, DC 20044-0683
(202) 307-1372
(202) 307-0054 (f)
Chelsea.E.Bissell@usdoj.gov
